UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN BECK, | ) |
|         Plaintiff, | ) |
| | ) |
| vs. | ) Case NO.: |
| | ) |
| YMCA OF METROPOLITAN CHICAGO | ) Judge: |
| FOUNDATION, PERRY L. GUNN, | ) |
| DENISE LAM, and JACQUELINE J. WOOTEN, | ) Magistrate: |
|         Defendant. | ) |

## COMPLAINT

Plaintiff, JOHN BECK, by and through his attorney, James J. Macchitelli, brings this action against Defendant, YMCA OF METROPOLITAN CHICAGO FOUNDATION, an Illinois not for profit Corporation, PERRY L. GUNN, DENISE LAMM, and JACQUELINE J. WOOTEN, and states as follows

### NATURE OF ACTION

1. This action is brought by Plaintiff, JOHN BECK, a tenant, against, Defendant, YMCA OF METROPOLITAN CHICAGO FOUNDATION, the Plaintiff's Landlord to enforce the provisions of Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 (f)(1)(A), (the "Fair Housing Act").

### JURISDICTION & VENUE

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question), 42 U.S.C. § 3613 (fair housing), and 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the events giving rise to Plaintiff's claims occurred within the District.

## JURY DEMAND

4. Plaintiff demands a jury trial on each and every claim to which he is so entitled.

## PARTIES

5. Plaintiff, JOHN BECK, since October 6, 2002, has been a tenant at the Leaning Tower YMCA Housing Complex and Plaintiff is a mentally disabled person, and is a citizen of the United States, residing in Niles, Illinois, within the Northern District of Illinois.

6. On information and belief at all times relevant to this action, Defendant, YMCA OF METROPOLITAN CHICAGO FOUNDATION, an Illinois not for profit Corporation, was the owner and manager of Leaning Tower YMCA Housing Complex commonly know and referred to as 6300 West Touhy Avenue, Niles, Illinois 60714.

7. On information and belief at all times relevant to this action, Defendant, PERRY L. GUNN, was Vice President of Operations of YMCA OF METROPOLITAN CHICAGO and therefore an employee of Defendant, YMCA OF METROPOLITAN CHICAGO..

8. On information and belief at all times relevant to this action, Defendant, DENISE LAM, was an Executive Operations Director of the Leaning Tower YMCA Housing Complex and therefore an employee of Defendant, YMCA OF METROPOLITAN CHICAGO..

9. On information and belief at all times relevant to this action, Defendant, JACQUELINE J. WOOTEN, was the on site Housing Manager and an employee of Defendant, YMCA OF METROPOLITAN CHICAGO.

## FACTUAL ALLEGATIONS

10. The Leaning Tower YMCA Housing Complex (hereafter "Leaning Tower YMCA"is a large multi family dwelling with 197 apartments or single room occupancy housing which is rented to the public and is located at 6300 West Touhy Avenue, Niles, Illinois 60714.

11. On October 1, 2002, Plaintiff filled out an application to become a resident of the Leaning Tower YMCA. Plaintiff was attracted to the apartment complex's many on-site amenities, including a swimming pool, recreational activities, and computer room.

12. Plaintiff's application for residential tenancy was accepted and on October 6, 2002, Plaintiff moved into room 210 at the Leaning Tower YMCA and thereafter switched rooms to 602 but has remained a continuous Leaning Tower YMCA resident since.

13. Soon after moving in, Plaintiff began to establish friendships with other residents and in January of 2007, Plaintiff received the Leaning Tower YMCA's Resident Rules and Regulations. A copy of the Leaning Tower YMCA's Resident Rules and Regulations is attached and marked Plaintiff's Exhibit "A."

14. Of grave importance is the YMCA's rule against a tenant's abusive or threatening behavior towards the staff, residents and guests whereby the YMCA provides:

> "Behavior that is abusive or threatening toward staff, residents, guests, members, or children will be addressed by management. This includes, but is not limited to, abusive and foul language. If disruption continues, it may lead to the termination of residency."

See Resident Rules and Regulations marked Exhibit A, Page 3.

15. During August of 2007 and September of 2007, several complaints were made against Plaintiff which alleged that Plaintiff was speaking loudly, arguing loudly and swearing loudly in different areas of the Leaning Tower YMCA.

16. Plaintiff complained and characterized these warnings as "intimidation tactics" and further informed the Defendants that his disability made it difficult for him to conduct himself within the guidelines that others believed were acceptable.

17. In October of 2007 and in response to Plaintiff's complaint, Defendant, JACQUELINE J. WOOTEN, met with Plaintiff and the two drafted a written "Performance Improvement Plan" that was signed by Plaintiff and Defendant, JACQUELINE J. WOOTEN, on behalf of Defendant, YMCA OF METROPOLITAN CHICAGO FOUNDATION.

18. It is therefore believed at the Performance Improvement Plan was a written contract between the parties and was to serve as a written guide and acknowledgment of each parties' expectations. A copy of the Performance Improvement Plan is attached and marked Plaintiff's Exhibit "B."

19. The main improvement requested of Plaintiff by Defendants was to improve his conduct towards the Leaning Tower YMCA staff whereby Plaintiff will not display any behavior that is abusive or threatening toward staff, residents, guests, members or children which includes but is not limited to abusive and foul language and Plaintiff was to refrain from engaging in any verbal disputes with staff, residents, guests, members or children.

20. In this "Performance Improvement Plan," Plaintiff advised and Defendant acknowledged that Plaintiff has a disability known as Asperger's Syndrome and further requests that the YMCA work with Plaintiff by (Defendants) not taking actions to evict him without real foundations. On information and belief, Defendants accepted Plaintiff's request that the (Defendants) not take actions to evict Plaintiff without real foundations.

21. Plaintiff's disability, Asperger's Syndrome, is a developmental disorder that affects a person's ability to socialize and communicate effectively. Thus, as a person with Asperger's Syndrome, Plaintiff experiences significant difficulties in his social interactions and therefore my use vulgar language and yell his thoughts and beliefs, but, having no history of violence, it is believed that Plaintiff shall never cause physical harm to staff, residents or guests.

22. Plaintiff has never been violent and is very caring toward other residents and friends who are more disabled than himself as many are disabled both mentally and phyically. In July of 2006, Plaintiff became a personal assistant to Sean Cullnan, YMCA resident who is disabled from a traumatic brain injury and participating in a home services program and is in need of Plaintiff's assistance for all of his daily tasks to assure his health, safety and well-being.

23. Since July of 2006, Plaintiff has been instrumental in the daily care of Sean Cullnan and thus, Plaintiff is a very important part of Sean's life and essential to Sean's ability to live on his own and not as a patient in an institution, as each and every day, Plaintiff checks on Sean numerous times and most importantly assists Sean during his seizures which occur daily.

24. Further, Plaintiff has assisted a resident known as Raymond Schmale who is also disabled and suffers from infections in his legs and feet. Plaintiff assists Raymond Schmale by cleaning a disinfecting open wounds on his appendages and just serves as a friend.

25. Plaintiff receives minimal financial assistance from Social Security Disability and as Sean's personal assistant, Plaintiff has earned supplemental income which has become essential to his well-being as he is paid $10.45 per hour for as many as 95 hours per month from the Department of Human Services for his assistance..

26. On June 10, 2009, at approximately 10:00 a.m., Plaintiff approached Defendant, JACQUELINE J. WOOTEN, and inquired why Defendant, DENISE LAMM, scheduled a meeting with Sean Cullnan and Plaintiff became angry and loud at the front desk.

27. On June 10, 2009, at approximately 3:52 p.m., Defendant, DENISE LAMM, made a telephone call to Sean Cullnan and attempted to schedule a meeting with him. Plaintiff got on the telephone and said that Sean Cullnan was not coming to the meeting and then hung up the telephone. Plaintiff demanded that as Sean's assistant that he be present for any meeting with Sean Cullnan and Defendants objected.

28. On June 10, 2009, at approximately 6:00 p.m., Defendant, JACQUELINE J. WOOTEN, and Defendant, DENISE LAMM, prepared and hand delivered to Plaintiff a 30 Day Notice that advised that Plaintiff's tenancy will be terminated on July 31, 2009. A copy of the 30 Day Notice that was served on Plaintiff is attached and marked Plaintiff's Exhibit " C."

29. On September 10, 2009, an eviction action was filed by Defendants and against the Plaintiff in the Circuit Court of Cook County, Illinois and is known as case number 09 M1 722389 and as of the date that this complaint was filed, that eviction action against Plaintiff was still pending and undetermined and it must be noted that Plaintiff's rent is not delinquent. A copy of the Summons and Complaint is attached and marked Plaintiff's Exhibit " D."

30. In the eviction case, during each Defendant's discovery deposition, Defendants' attorney instructed each Defendant not to answer a majority of the questions and specifically not to answer why Plaintiff was being evicted. The attorney stated that no reason is necessary for a landlord to terminate a tenancy. Plaintiff's tenancy was being terminated for no reason at all.

31. That these actions and false statements by each Defendant and Defendant's attorney were a violation of the Rules of Professional Conduct and further evidence of the Defendants' malicious and retaliatory intent as there is substantial evidence that Defendants' statements and the attorney's statements were false and were knowingly false when made in a discovery deposition which is a judicial proceeding.

32. Substantial evidences proves that Plaintiff is being evicted because of his disability and as retaliation for his interference and attempts to stick up for other tenants against the YMCA and its staff and refusing to allow the YMCA and its staff from unlawfully obtain the medical and psychological records of its disabled tenants and further deny the Defendants the opportunity to invade its tenant's privacy which is protected by HIPAA 42 U.S.C. §299b-22.

33. The 30 Day Notice was served on Plaintiff two hours after he hung up the telephone on Defendant, DENISE LAM, and thus, two hours after he interfered with Defendants' attempt to schedule an appointment with Sean Cullnan. This actual sequence is circumstantial proof of the Defendants' true intent to terminate Plaintiff's tenancy because of his disability.

34. As a direct result of the termination of Plaintiff's tenancy, Plaintiff experienced and continues to experience great emotional and psychological distress, which manifested in physical symptoms or more frequent bouts of severe migraine headaches and bouts with long periods of severe depression related to his disability which caused and causes severe physical and mental pain and severe emotional distress.

35. Before terminating the lease, Defendants knew that Plaintiff was disabled and was ready, willing, and able to continue renting the apartment in which he was living at the time that Defendants terminated his tenancy. Defendants also knew this as a result of communications Plaintiff had with Defendants through letters that he wrote and that his doctors wrote on his behalf and regarding his desire to continue renting. Indeed, Plaintiff explained to Defendants that if he lost his tenancy he would also lose his employment as Sean's assistant.

36. That Defendants' actions are discriminatory in that the Defendants refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations are necessary to afford Plaintiff equal opportunity to use and enjoy the Leaning Tower YMCA and therefore a violation of 42 U.S.C. §3604(f)(3)(B).

37. Or, alternatively, Plaintiff was evicted as retaliation for his interference with YMCA staff as he assisted YMCA tenants to exercise their rights to deny Defendants the unlawful access to those tenant's medical and psychological records and further deny the Defendants the opportunity to invade its tenant's privacy which is protected by HIPAA 42 U.S.C. §299b-22.

38	On information and belief at all times relevant to this action, there was no rule, policy, or practice of Defendants to terminate or otherwise adversely affect the tenancy of Plaintiff as was espoused in the 30 Day Notice as Defendants never believed that Plaintiff was a danger nor threat to staff, residents, guests, members or children.

39.	Defendants tolerated Plaintiff's loud verbal outbursts and vulgar language for seven years. Defendant kept any and all complaints about Plaintiff that were made by YMCA staff and residents. Defendants never terminated Plaintiff because his alleged misconduct was never serious and Plaintiff never posed a threat to the health, safety nor well-being of any other individual.

40.	The action of Defendants were intentional, wanton, malicious, oppressive, reckless, and callously indifferent to the rights of Plaintiff, thus entitling him to an award of punitive damages against Defendants. Further, Defendants' actions have caused and intentionally inflicted severe emotional distress and depression upon Plaintiff who is suffering great and irreparable loss, humiliation, embarrassment, loss of rights, and other damage and injuries as a proximate result of the acts and conduct of Defendants herein and will continue to so suffer unless said acts and conduct of Defendants are enjoined.

41.	Plaintiff has no adequate remedy at law for the harm done by Defendants, and

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. § 3604(f)(3)(B)**

42.	Plaintiff re-alleges paragraphs 1 to 38 of this Complaint as paragraph 42.

43.	Title VIII of the Civil Rights Act of 1968, known as the Fair Housing Act, prohibits discrimination in the sale or rental of public or private housing on the basis of handicap 42 U.S.C. § 3604 (f) (1988 amendment).

44. For purposes of the Fair Housing Act, as amended, a "handicap" is defined as:

   (1) a physical or mental impairment which substantially limits one or more of a person's major life activities;

   (2) a record of such impairment; or

   (3) being regarded as having such impairment, 42 U.S.C. Section 3602(h);

   codified at 24 C.F.R. Section 101.201.

45. Such mental impairments include, but are not limited to:

   any mental or psychological disorder, including an emotional illness,

   24 C.F.R. § 100.201 (a) (2).

46. The Fair Housing Act, as amended, and its regulations, prohibit, *inter alia,* discrimination in the rental of, or otherwise making unavailable or denying a dwelling because of a handicap. The Act also prohibits discrimination against any person in the terms, conditions and privileges of renting a dwelling because of handicap.

47. By failing to make reasonable accommodations necessary for Plaintiff's alleged threatening behavior caused by his disability, Defendants have denied Plaintiff an equal housing opportunity. By terminating Plaintiff's tenancy based on Plaintiff's disability, Defendants intentionally discriminated against Plaintiff by denying him the opportunity to continue renting his apartment in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B).

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE FAIR HOUSING ACT, 42 U.S.C. § § 1981 and 1982

48. P Plaintiff re-alleges paragraphs 1 to 38 of this Complaint as paragraph 48.

49. Defendants' actions in terminating Plaintiff's lease and denying him the opportunity to rent any apartment in the complex he has lived for almost 8 years because of his disability is unlawful discrimination as it deprives Plaintiff the equal opportunity to the rights of

life, liberty and the pursuit of happiness and a violation of the Plaintiffs' right to be protected against impairment by non-governmental discrimination and impairment of his rights under color of State law as enjoyed by white citizens in violation of 42 U.S.C. § § 1981 and 1982.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT,
### 775 ILCS 5/1-102(A) & 5/3-102 (A), (B)

50. Plaintiff re-alleges paragraphs 1 to 38 of this Complaint as paragraph 50.

51. By failing to make reasonable accommodations necessary for Plaintiff's alleged threatening behavior caused by his disability, Defendants have denied Plaintiff an equal housing opportunity by terminating Plaintiff's tenancy and by denying Plaintiff the opportunity to continue renting his apartment. Therefore, Defendants have intentionally discriminated against Plaintiff on the basis of Plaintiff's disability and therefore violated the Illinois Human Rights Act, 775 ILCS 5/3-102 (A), (B) & 775 ILCS 5/1-102(A).

### ALTERNATIVELY, FOURTH CLAIM FOR RELIEF
### RETALIATORY EVICTION

52. Plaintiff re-alleges paragraphs 1 to 38 of this Complaint as paragraph 52.

53. It is the public policy of the State of Illinois to protect tenants and residents from retaliatory conduct of owners and landlords of apartment buildings.

54. The actions of Defendants in evicting Plaintiff and attempting to have Plaintiff removed from the apartment in the complex where Plaintiff has been living for almost 8 years, were committed against Plaintiff in retaliation for Plaintiff's assistance to other tenants, Sean Cullnan and Raymond Schmale, which prohibited Defendants for obtaining the tenants' privileged and confidential medical and psychological records.

55. The Defendants' actions at bar against the Plaintiff are so invidiously motivated and retaliatory that Defendants' actions contravene and violate the public policy of the State of Illinois. As such, Defendants' intention s to evict the Plaintiff must be enjoined and may not proceed against the Plaintiff.

56. The acts of Defendants were intentional, wanton, malicious, oppressive, reckless, callously indifferent to the rights of Plaintiff and out right retaliatory and therefore the Plaintiff is entitled to an award of punitive damages against Defendants. Further, Defendants' actions have caused and intentionally inflicted severe emotional distress and depression upon Plaintiff and have caused Plaintiff the need to retain an attorney and Plaintiff has suffered certain economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, JOHN BECK, respectfully requests that this Court grant the following relief:

(a) Declare that the discriminatory practices of the Defendants, as set forth above, violate the Fair Housing Act, 42 U.S.C. § 3604, and the Illinois Human Rights Act, 775 ILCS 5/3-102 (A), (B) and 5/1-102(A);

(b) Declare that Plaintiff does not constitute a direct threat to the health or safety of other individuals at the Leaning Tower YMCA;

( c) Enjoin Defendants, their agents, employees, and successors, and all other persons in active concert or participation with them, from evicting the Plaintiff

( d) Order Defendants to take such affirmative steps Plaintiff, JOHN BECK, as nearly as practicable to the position he would have been in but for the discriminatory conduct and to take affirmative steps to prevent such discrimination, harassment, and retaliation against Plaintiff in the future;

(e) Award compensatory damages to Plaintiff, JOHN BECK, pursuant to 42 U.S.C. § 3613(c)(1) and 775 ILCS 5/10-102(C)(1) in an amount to be determined at trial;

(f) Award punitive damages to Plaintiff, JOHN BECK, pursuant to 42 U.S.C. § 36l3(c)(l) and 775 ILCS 5/l0-l02(C)(1), in an amount to be determined at trial;

(f) Award Plaintiff, JOHN BECK, reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 3613(c)(2) and 775 ILCS 5110-102(C)(2); and

(g) Grant such other and further relief as this court deems just and proper under the circumstances.

Respectfully submitted,

/s/ James J. Macchitelli

James J. Macchitelli
Attorney for Plaintiff

Attorney Number: 6208773
James J. Macchitelli
Attorney for Plaintiff
1051 Perimeter Drive, Suite 400
Schaumburg, Illinois 60173
Telephone: (847) 414-4532
Facsimile: (847) 890-6457
Email: jimmymacc@aol.com